**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :

**ATMOSPHERE SCIENCES, LLC, and** :
**ZERO ODOR, LLC,** :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀**Plaintiffs,** :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀**- against -** :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
**SCHNEIDER ADVANCED** :
**TECHNOLOGIES, INC., and REM** :
**BRANDS, INC.,** :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀**Defendants.** :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-19-12

**OPINION AND ORDER**

**12 Civ. 3223 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. ⠀⠀INTRODUCTION

⠀⠀⠀⠀⠀Atmosphere Sciences LLC ("Atmosphere") and Zero Odor LLC

("Zero Odor") have sued Schneider Advanced Technologies ("SAT") and Rem

Brands ("Rem"), alleging seven causes of action arising out of SAT and Rem's

sale of odor-related technology and products. Defendants filed a motion to dismiss

all counts on June 22, 2012. The motion is denied in part and granted in part.

Counts three, four, five, and six are dismissed, and plaintiffs are granted leave to

amend their complaint.

1

## II.    BACKGROUND

Atmosphere and Zero Odor brought suit on April 24, 2012.  They allege that SAT and Rem engaged in duplicitous business practices that gave rise to seven causes of action:  (1) breach of contract [Atmosphere v. SAT], (2) breach of fiduciary duty [Atmosphere and Zero Odor v. SAT], (3) inducing a breach of a fiduciary duty [Atmosphere and Zero Odor v. Rem], (4) tortious interference with a contract [Zero Odor v. Rem], (5) diverting corporate opportunities [Zero Odor v. SAT], (6) breach of the covenant of good faith and fair dealing [Atmosphere v. SAT], and (7) fraud [Zero Odor v. SAT].[1]  Atmosphere owns a majority stake in Zero Odor, and both are located in New York.[2]  SAT owns a minority stake in Zero Odor and is located in Kentucky, as is Rem.[3]

The complaint alleges the existence of three separate contracts.  The first, a September 20, 2004 Sale and Royalty Agreement ("SRA"), was between Zero Odor and SAT.[4]  In that agreement, SAT agreed to sell certain products exclusively to Zero Odor, and Zero Odor agreed to buy these products exclusively

---

[1]      *See* Complaint ("Compl.") ¶ 1.

[2]      *See id.* ¶¶ 2-3.

[3]      *See id.* ¶¶ 4-5.

[4]      *Id.* ¶ 9.

from SAT.[5]  The second alleged contract was a modified restatement of the first –

the January 1, 2007 Amended Sale and Royalty Agreement ("Amended SRA").[6]

In this agreement Zero Odor agreed to pay SAT royalties of five percent of all SAT

products that Zero Odor sold, award a minimum royalty payment to SAT of

$600,000 per year, and grant SAT a twenty-three percent share in Zero Odor.[7]  In

return, SAT promised to sell certain products exclusively to Zero Odor.[8]  SAT also

provided assurances that its intellectual property protections ensured that no other

company could produce substantially similar products.[9]  Finally, in 2008,

Atmosphere and SAT – as the only shareholders of Zero Odor – allegedly entered

into an agreement ("Operating Agreement") providing that both parties were

allowed to do business with others as long as this activity did not compete with and

was not detrimental to "the interests of the Company or any Affiliate of the

Company."[10]  "[T]he Company" presumably referred to Zero Odor.  SAT was also

given the right to prevent Zero Odor from acquiring any loans from Atmosphere in

---

[5]     *See id.*

[6]     *Id.* ¶ 11.

[7]     *See id.* ¶ 12.

[8]     *See id.*

[9]     *See id.*

[10]    *Id.*

excess of five million dollars.[11]

According to the Complaint, SAT then took a variety of actions that violated the written agreements and breached duties owed to Zero Odor or Atmosphere.  Specifically, the Complaint alleges that the owner of SAT, David Schneider, discontinued research and development work at SAT and used SAT resources and technology to continue work at a new, shell company, Rem.[12] Schneider and Rem then allegedly developed products that they provided to other companies even though Zero Odor was theoretically entitled exclusive access to these products.[13]  While doing this, Schneider denigrated Zero Odor's products to its competitors and potential purchasers.[14]  Some of these competitors had initially contacted SAT because they saw SAT's patents on Zero Odor's products.[15]  SAT also denied Zero Odor the ability to increase the size of its loan from Atmosphere unless Zero Odor would agree to limit or remove the exclusivity agreement.[16]  The

---

[11]    *See id.* ¶ 15.  According to the contract, consent for an extension of the loan "shall not be unreasonably withheld."  *Id.*

[12]    *See id.* ¶ 19.

[13]    *See id.* ¶¶ 19-21.

[14]    *See id.*

[15]    *See id.* ¶ 20.

[16]    *See id.* ¶ 27.

Complaint then lists various statements SAT made to Zero Odor and facts that would indicate the known falsity of these statements.[17]

SAT and Rem's motion to dismiss alleges that the Complaint does not state a claim upon which relief can be granted.[18]  They also argue that the court lacks personal jurisdiction over Rem, that Atmosphere lacks standing to sue, and that the dispute is subject to an arbitration clause that is present in one of the three signed contracts.[19]

## III.   LEGAL STANDARD

### A.   Standard for Dismissal for Failure to State a Claim

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[20] *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[21]

---

[17]     *See id.* ¶¶ 19-21, 27-28.

[18]     *See* Memorandum in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 1.

[19]     *See id.*

[20]     556 U.S. 662, 679 (2009).

[21]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[22]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[23]

   To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[24]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[26]  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint,

---

55, 59 (2d Cir. 2010).

   [22]   *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

   [23]   *Id.* at 679.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

   [24]   *Twombly*, 550 U.S. at 564.

   [25]   *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

   [26]   *Id.* (quotation marks omitted).

documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[27]

## IV.   APPLICABLE LAW

### A.   Personal Jurisdiction

On a motion under Rule 12(b)(2), when the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case."[28]  Plaintiffs "can make this showing through [their] own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant."[29]  Thus, a court may consider materials outside the pleadings,[30] but must credit plaintiffs' averments of jurisdictional facts as true.[31]  "[A]ll allegations

---

[27]   *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[28]   *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

[29]   *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

[30]   *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

[31]   *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

are construed in the light most favorable to the plaintiff and doubts are resolved in

the plaintiff's favor, notwithstanding a controverting presentation by the moving

party."[32]  Nonetheless, where a defendant "rebuts [plaintiffs'] unsupported

allegations with direct, highly specific, testimonial evidence regarding a fact

essential to jurisdiction – and plaintiffs do not counter that evidence – the

allegation may be deemed refuted."[33]

### 1.    New York General Jurisdiction Under Section 301

Under section 301 of the New York Civil Practice Law and Rules

("CPLR"), New York subjects a foreign corporation to general jurisdiction if it is

"doing business" in the State.[34]  Courts will find that a foreign parent corporation is

doing business in New York "when the subsidiary is acting as an agent for the

parent, or when the parent's control is so complete that the subsidiary is a 'mere

department' of the parent."[35]  Determining whether an entity is a "mere

department" requires "a fact-specific inquiry into the realities of the actual

---

[32]    *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).
*Accord Whitaker*, 261 F.3d at 208.

[33]    *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186,
2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

[34]    *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999).

[35]    *Id.* (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d
Cir. 1996)).

8

relationship between the parent and subsidiary."[36]

To determine whether the subsidiary is a "mere department" of the parent corporation, a court must consider the following factors set forth in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*: (1) "common ownership," (2) "financial dependency of the subsidiary on the parent corporation," (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and (4) "the degree of control over the marketing and operational policies exercised by the parent."[37]  While the first factor – common ownership – is "essential" for an assertion of jurisdiction, "[t]he other three are important, but not essential."[38]  As such, "[t]he overall weighing of the various factors thus necessitates a balancing process, and not every factor need weigh entirely in the plaintiffs' favor."[39]

### 2.     New York Specific Jurisdiction Under CPLR 302(a)(3)

---

[36]     *Koehler*, 101 F.3d at 865.

[37]     751 F.2d 117, 120-22 (2d Cir. 1984).  *Accord Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998) (applying *Beech* factors).

[38]     *Tese Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 416 (S.D.N.Y. 2009).  *Accord ESI*, 61 F. Supp. 2d at 52.

[39]      *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004) (quotation marks omitted).

Section 302(a)(3) confers personal jurisdiction over a non-resident defendant who commits a tortious act outside New York that causes injury in New York. The plaintiff must prove that the defendant

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.[40]

To satisfy the first element, the defendant must make a "discernable effort to directly or indirectly serve the New York market."[41] As to the second element, the test for "reasonably expects" is objective, not subjective.[42] The out-of-state act must be the proximate cause of the harm in New York; that is, the act must be "so close to the injury that reasonable people would regard it as a cause of the injury."[43] In addition to this reasonable expectation, the out-of-state business must derive substantial revenue from interstate or international commerce.

---

[40]   N.Y. C.P.L.R. § 302(a)(3) (2006).

[41]   *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (citation omitted).

[42]   *Id.*

[43]   *Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y. 1995).

10

### 3.    Due Process

As set forth by the Supreme Court in *International Shoe v. Washington*, due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[44] This involves an analysis consisting of two components:  the minimum contacts test and the reasonableness inquiry.

To establish the minimum contacts necessary to satisfy due process, the plaintiff "must show that his claim arises out of or relates to defendant's contacts with the forum state, . . . that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there."[45]  If defendant's contacts with the forum state rise to this minimum level, a defendant may defeat jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[46]

### B.    Arbitration

---

[44]    326 U.S. 310, 316 (1945).

[45]    *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (quotation marks omitted).

[46]    *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

11

The determination of whether a dispute is arbitrable under the Federal Arbitration Act ("FAA")[47] comprises two questions:  "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[48]  To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."[49]  When considering motions to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment."[50]

Because there is "a strong federal policy favoring arbitration,"[51] the Second Circuit has emphasized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[52]  Federal policy therefore

---

[47]  9 U.S.C. § 3.

[48]  *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).

[49]  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[50]  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted).

[51]  *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted).

[52]  *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).

requires courts to "construe arbitration clauses as broadly as possible" and "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[53]

## C.   Standing

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."[54]  A plaintiff has the burden to show that three standing requirements are met.  A plaintiff must allege an "injury in fact," there must be causation between defendant's conduct and plaintiff's injury, and plaintiff's injury must be capable of being redressed.[55]

Under New York law, "an individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation, even though the particular wrong may have resulted in a depreciation or destruction of the value of his corporate stock."[56]  This principle "applies equally to closely held corporations as to large, publicly traded corporations."[57]

---

[53]    *Id.*

[54]    *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  *Accord Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (citation omitted).

[55]    *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

[56]    *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 331 (S.D.N.Y. 2005) (citations omitted).

[57]    *Id.*

Nonetheless, injury to a subsidiary or closely held corporation will not preclude standing for a plaintiff whose own injuries are direct.[58]  A direct injury can occur when the wrongdoer breaches "a duty owed to the shareholder independent of any duty owing to the corporation wronged."[59]

###    D.    Breach of Contract

A breach of contract claim requires the plaintiff to show "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach."[60] Under New York law, a plaintiff "is required only to provide defendants with a 'short, plain notice' of the claims against them pursuant to Rule 8."[61]  Nevertheless, the complaint must provide "specific allegations" as to the contract's parties, terms, and breached provisions.[62]

---

[58]    *See id.*

[59]    *Id.*

[60]    *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

[61]    *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 173 (S.D.N.Y. 2009) (citations omitted).

[62]    *Id.* at 183.

### E.   Breach of Fiduciary Duty

Under New York law, "[t]he elements of a claim for breach of a fiduciary obligation are:  (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."[63]  Fiduciary duties can exist in a broad array of relationships, from technical to informal; they are essentially relationships "founded upon trust or confidence reposed by one person in the integrity and fidelity of another."[64]

At the core, "the existence of fiduciary duties depends on the facts of a particular relationship."[65]  "[T]herefore, a claim alleging the existence of a fiduciary duty is not [usually] subject to dismissal in a 12(b)(6) motion, given the generous pleading standard established in Fed.R.Civ.P. 8."[66]

### F.   Diverting Corporate Opportunities

Fiduciaries or employees of a company improperly divert corporate opportunities when they, "without consent, divert and exploit for their own benefit

---

[63]     *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).

[64]     *Schmidt v. Bishop*, 779 F. Supp. 321, 325 (S.D.N.Y. 1991) (citing *Penato v. George*, 383 N.Y.S.2d 900, 904 (1976)).

[65]     *Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 680-81 (S.D.N.Y. 1988) (citations omitted).

[66]     *Id.*

any opportunity that should be deemed an asset of the corporation."[67]  Courts traditionally examine whether the corporation had a "tangible expectancy" of the benefit that was diverted.[68]  Also relevant is whether the alleged tortfeasor utilized the corporation's information, property, or other advantage to aid in his or her acquisition of the opportunity.[69]

### G.    Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[70]  The covenant is implied in every contract governed under New York law.[71]  Accordingly, a "breach of the implied duty of good faith is considered a breach of the underlying

---

[67]    *Alexander & Alexander of New York, Inc. v. Fritzen*, 542 N.Y.S.2d 530, 533 (1989) (citations omitted).

[68]    *Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 88 (2d Cir. 1973).

[69]    *See, e.g., id.* at 88-89; *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 523 (S.D.N.Y. 2011).

[70]    *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (quotation marks and citation omitted).

[71]    *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

16

contract."[72]  For this reason, "a claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."[73]

## H.    Intentional Misrepresentation/Fraudulent Inducement Under Rule 9(b)

To state a claim for fraud in New York, plaintiff must allege "that the defendant knowingly made a false statement of material fact with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on that false statement to its detriment."[74]  Allegations of fraud are subject to the heightened pleading standards of Rule 9(b), which state that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Although Rule 9(b) does not require plaintiffs to set forth their evidence in the complaint, the complaint must give particulars regarding "the fraudulent content of the speech, the time and place at which the statements were

---

[72]    *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (citing *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)).

[73]    *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) (quotation marks and citation omitted).

[74]    *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995).

made, and the identity of individuals making the fraudulent statements."[75]

New York law "preclude[s] fraud actions where the 'only fraud charged relates to a breach of contract.'"[76] "'A contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'"[77] "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support" a claim for fraud.[78] However, "it does not . . . matter that the alleged fraudulent representation is virtually identical to the promise contained in the contract as long as it is made at a different time and place."[79] All that is required is something beyond the contract, such as subsequent assurances of performance, to form the

---

[75]    *Id.*

[76]    *Lomaglio Assoc., Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 94 (S.D.N.Y. 1995) (quoting *Miller v. Volk & Huxley, Inc.*, 355 N.Y.S.2d 605, 607 (1st Dep't 1974)). *Accord Metropolitan Transp. Auth. v. Triumph Advertising Prod.*, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) ("Given that the alleged fraudulent misrepresentations set forth in the first cause of action [for breach of contract] relate only to the specifications of the contract . . . the second cause of action [for fraud] is redundant . . . .").

[77]    *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002) (quoting *Rocanova v. Equitable Life Ins. Soc'y*, 83 N.Y.2d 603, 614 (1994)).

[78]    *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995).

[79]    *Gotham Boxing, Inc. v. Finkel*, No. 601479, 2008 WL 104155, at *10 (Sup. Ct. N.Y. Co. 2008).

18

basis for a claim of fraud.[80]

## V.    DISCUSSION

I will first address defendants' arguments that impact multiple claims, including jurisdiction, arbitration, and standing.  Then I will address the remaining claims in the order they are alleged in the Complaint.

### A.    Personal Jurisdiction over Rem Brands

The facts alleged in the Complaint do not establish a prima facie case for personal jurisdiction over Rem Brands.  The Complaint details some of Rem's business.[81]  However, there is no reference to any contacts Rem has in New York. The only general contacts alleged in the Complaint involve (1) relationships with "Fortune 100" companies, whose identities and locations are unknown, and (2) a website.[82]  These contacts do not satisfy the requirements of the New York long-arm statute or due process.[83]

While the Complaint alleges that Rem is a shell company for

---

[80]    *See id.*

[81]    *See* Compl. ¶ 25.

[82]    *See id.*

[83]    *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87 (E.D.N.Y. 2006) (citations omitted); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (emphasizing that passive websites are less likely to provide grounds for personal jurisdiction).

Schneider and SAT, New York's long-arm statute allows personal jurisdiction over a parent company whose subsidiary is operating in New York.[84]  It does not logically follow that the opposite should be true – that personal jurisdiction may be exercised over a subsidiary whose parent company is operating in New York.  It certainly does not follow that a newly-created company is subject to personal jurisdiction in any forum where the company's founder is subject to personal jurisdiction.  Indeed, in order for SAT to serve as Rem's agent for minimum-contacts purposes, the *Beech* factors indicate that Rem must have at least some type of meaningful control over SAT's personnel, marketing, operation, or finances during the time that SAT did business in New York.[85]

Rem's only alleged connection to New York is its website.  Plaintiffs do not contend that the website specifically targets or focuses on New York. Generally, "[c]ourts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users."[86]  And while the plaintiffs allege that Rem's tortious activity caused an injury in New York, they do not allege sufficient facts to satisfy the other elements of section 302(a)(3), which

---

[84]     *See ESI*, 61 F. Supp. 2d at 51.

[85]     *See Beech Aircraft*, 751 F.2d at 120-22.  *Accord Jazini*, 148 F.3d at 184-85 (applying *Beech* factors).

[86]     *ISI Brands*, 458 F. Supp. 2d at 87 (citations omitted).

require either (i) regular business or revenue in the state or (ii) a reasonable

expectation that its act would cause consequences in the state and the receipt of

substantial revenue from interstate or international commerce.[87]  Plaintiffs have not

asserted facts showing that Rem engaged in regular business or obtained revenue in

New York or obtained substantial revenue from interstate or international

commerce.  Thus, section 302 does not provide a basis for jurisdiction over Rem.

Because SAT is not alleged to be a subsidiary or agent of Rem and

Rem's only alleged connection to New York is a passive website, plaintiffs have

not presented a prima facie case for personal jurisdiction over Rem.  Counts three

and four are dismissed with leave to amend.

### B.     Arbitration as to Claim Five (Diverting Corporate Opportunities)

Zero Odor alleges that SAT diverted Zero Odor's corporate

opportunities by refusing to sell to Zero Odor new products, selling these products

to competitors, and using Rem to market and sell products that should have been

offered to Zero Odor.  This claim must be dismissed because it is either (1) based

on a contract that both parties agree has an arbitration clause or, (2) if not based on

that contract, then is not supported by any facts in the Complaint.

Through the Complaint and the assertions in both parties' Memoranda

---

[87]     *See* N.Y. C.P.L.R. § 302(a)(3).

of Law, there appears to be a consensus that the 2007 Amended SRA has an arbitration clause.[88] This Agreement was between Zero Odor and SAT. The Complaint does not allege that Zero Odor was a party to any other contract with SAT except the 2004 SRA, which was updated by the Amended SRA.[89]

The activity alleged to divert corporate opportunities was SAT's and Rem's sale of products and technology to Zero Odor's competitors. These competitors allegedly contacted SAT upon seeing SAT's patents on Zero Odor's products.[90] However, it is only through the Amended SRA that such conduct could satisfy the elements of diverting corporate opportunities; only under that contract could exclusive sale of SAT's products to Zero Odor be considered an "asset of the corporation," of which Zero Odor had a "tangible expectancy."[91] Without such a contract, SAT's products would not be "assets" of Zero Odor. SAT could reasonably be expected to sell to prospective purchasers or transfer its intellectual

---

[88]    *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Opp.") at 19 (noting that the claims in the complaint "are based entirely on [SAT's] duties and responsibilities set forth in the Operating Agreement[, not the Amended SRA.]"); Def. Mem. at 3.

[89]    *See* Compl. ¶ 11.

[90]    *See id.* ¶ 20.

[91]    *Alexander & Alexander*, 542 N.Y.S.2d at 533 (citations omitted) (discussing requirements of diverting corporate opportunities).

property to another company.  As this exclusivity right originated in the 2007

Amended SRA – which both parties indicate had an arbitration clause – this claim

must proceed in arbitration.

While a claim of diverting corporate opportunities could theoretically

exist outside the context of the 2007 Amended SRA, the other facts in the

Complaint do not satisfy the required elements.  Namely, Zero Odor could not

have had a tangible expectation of receiving new products or exclusive access to

SAT's products without relying upon the Amended SRA.  Other activities that

SAT engaged in would not constitute diverting corporate opportunities; these

actions include allegedly denigrating Zero Odor's products to competitors, refusing

permission for Zero Odor's increased loan from Atmosphere, and misrepresenting

SAT's actions to Zero Odor and Atmosphere.  Such actions either fail to satisfy the

requirement (1) of diversion and exploitation of resources for SAT's own benefit

or (2) that the benefit be deemed an asset of the corporation.[92]  Because any

diverting corporate opportunities claim either arises from the contract violation –

necessitating arbitration – or fails to find support in the allegations of the

Complaint unrelated to the contract, count five is dismissed with leave to amend.

---

[92]     *See id.*

23

### C.     Arbitration as to Claims One, Two, Six, and Seven

Defendants assert that all other claims are also bound by the arbitration clause of the 2007 Amended SRA.  However, for claims one, two, six, and seven, the facts alleged in the Complaint sustain a claim for relief apart from the Amended SRA.  Claims three and four are not addressed here because they are both dismissed for lack of personal jurisdiction.

Claim one involves Atmosphere, which was not a party to the Amended SRA.[93]  The claim also allegedly arises out of the 2008 Operating Agreement, which neither party alleges includes an arbitration clause.[94]  The same arguments – that Atmosphere was not a party to the 2007 Amended SRA and only signed the 2008 Operating Agreement – apply to Atmosphere's cause of action in claim two.  Zero Odor's cause of action in claim two could arise out of SAT's relationship with Zero Odor based on ownership of Zero Odor's stock and SAT's promise not to "unreasonably withh[o]ld" consent for Zero Odor to secure an increased loan.[95]  The loan provision is also included in the 2008 Operating Agreement, which has no arbitration clause.  In short, unlike claim five, Zero

---

[93]     *See* Compl. ¶ 11.

[94]     *See* Pl. Opp. at 19; Def. Mem. at 3.

[95]     Compl. ¶ 15.

Odor's breach of fiduciary duty claim against SAT need not rely on the facts related to the 2007 Amended SRA.

Atmosphere is the only plaintiff in claim six and the Operating Agreement is the only relevant contract.  Claim seven relates to alleged fraudulent conduct apart from the claims of any of the contracts.  For these reasons, defendants' motion to dismiss claims one, two, six, or seven in favor of arbitration is denied.

**D.    Atmosphere Sciences' Standing**

Defendants allege that Atmosphere lacks standing to bring any claims against SAT.  They argue that Zero Odor is the only party that allegedly was harmed and that Atmosphere cannot bring suit simply as a shareholder seeking damages for the diminution of equity interest.[96]  However, here Atmosphere brings suit for a separate wrong committed solely against Atmosphere:  SAT's violation of the Operating Agreement and conduct related to this Agreement.  According to the Complaint, Zero Odor was not a party to this contract.[97]  As Atmosphere's rights under the Operating Agreement are not derivative of Zero Odor's rights, Atmosphere's claims arise from "circumstances independent of and extrinsic to the

---

[96]    *See Solutia Inc.*, 385 F. Supp. 2d at 331 (citations omitted).

[97]    *See* Compl. ¶ 13.

25

corporate entity."[98]

### E.    Breach of Contract Claim

Atmosphere alleges (1) the existence of a 2008 Operating Agreement between Atmosphere and SAT; (2) Atmosphere's performance of its obligations to refrain from taking any actions to the detriment of Zero Odor; (3) SAT's breach of the contract by denigrating Zero Odor's products to competitors, denying Zero Odor the right to acquire a loan, and making false statements to Zero Odor; and (4) diminution of Atmosphere's equity interest in Zero Odor and Atmosphere's inability to increase its loan amount to Zero Odor.  Atmosphere has sufficiently pled its breach of contract claim.[99]

### F.    Breach of Fiduciary Duty Claims

Atmosphere alleges (1) a relationship between SAT and Atmosphere based on their joint ownership of Zero Odor, their 2008 Operating Agreement, and SAT's statements; (2) actions by SAT that harmed Zero Odor and misrepresentations made to Zero Odor and Atmosphere, and (3) diminution of Atmosphere's equity interest in Zero Odor and Atmosphere's inability to increase

---

[98]    *Solutia*, 385 F. Supp. 2d at 331 (citing *Fifty States Mgmt. Corp. v. Niagara Permanent Sav. & Loan Assn.*, 396 N.Y.S.2d 925, 927 (4th Dep't 1977)).

[99]    *See Diesel Props S.r.l.*, 631 F.3d at 52 (citations omitted) (listing four elements of breach of contract).

its loan amount to Zero Odor.  These facts state a plausible claim for breach of

fiduciary duty, as they establish the existence of a duty, knowing breach, and

damages.[100]  Moreover, these facts do not rely on the 2007 Amended SRA.

While some of these facts may overlap with the breach of contract

claim for the 2008 Operating Agreement, it is too early to determine whether

Atmosphere's breach of fiduciary duty claim against SAT is essentially a

restatement of the contract claim.  Atmosphere's relationship as co-shareholder in

Zero Odor with SAT exists outside the context of the 2008 Operating Agreement;

this would provide an avenue for a breach of fiduciary duty claim that is not

directly related to the contract claim, as New York law recognizes a fiduciary duty

between majority and minority shareholders of a company.[101]  Furthermore, once a

fiduciary duty is established based on a contract, the relationship the contract

establishes imposes "a duty to act with care and loyalty independent of the terms of

the contract."[102]

---

[100]     *See Johnson*, 660 F.3d at 138 (citing *Barrett*, 883 N.Y.S.2d at 308).

[101]     *See In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 526
(Bankr. E.D.N.Y. 1994) ("New York fiduciary law embraces . . . . majority/
minority shareholders . . . .") (citing *Brass v. Am. Film Technologies, Inc.*, 987
F.2d 142, 150-51 (2d Cir. 1993)).

[102]      *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 471
(S.D.N.Y. 2007).  *Accord Bullmore v. Ernst & Young Cayman Islands*, 846
N.Y.S.2d 145, 148 (1st Dep't 2007).

Zero Odor's breach of fiduciary duty claim involves similar facts. The Complaint alleges that (1) a relationship existed such that SAT owned a portion of Zero Odor, provided access to proprietary technology and products, and had contractual obligations with Zero Odor and Zero Odor's parent company; (2) SAT misrepresented facts to Zero Odor, denigrated its products to competitors, and denied its request to secure additional loans from Atmosphere; and (3) Zero Odor lost business opportunities.  Again, these facts do not include SAT's actions in violation of the 2007 Agreement, which is subject to arbitration.  The facts alleged are sufficient to state a claim by Zero Odor and Atmosphere for breach of fiduciary duty.

### G.    Breach of Covenant of Good Faith and Fair Dealing Claim

Atmosphere argues that SAT's actions surrounding the Operating Agreement "breached the covenant of good faith and fair dealing."[103]  While this may be true, Atmosphere cannot bring both the contract claim and the covenant of good faith claim because they are premised on the same set of facts.  The allegations underlying both claims must be different.[104]  Unlike the breach of fiduciary duty claim, which could be based on SAT's position as co-owner with

---

[103]    Compl. ¶¶ 51-52.

[104]    *See Deutsche Bank Sec.*, 578 F. Supp. 2d at 664 (citations omitted).

Atmosphere, the success of the covenant of good faith claim rests solely on SAT's actions that violated the implied covenant of the Operating Agreement. Indeed, in describing how SAT breached this covenant, the Complaint specifies activities that are prohibited under the Operating Agreement and the Amended SRA,[105] and the plaintiffs' Memorandum of Law details exactly how SAT's violation of specific provisions of the Operating Agreement constitute the breach of the covenant of good faith.[106] Because the breach of the covenant of good faith claim is premised on the same set of facts as the breach of contract claim, count six is dismissed with prejudice.

## H.    Fraud

Rule 9(b) requires plaintiffs to identify the (1) statements, (2) speaker, (3) location, and (4) fraudulent nature of alleged fraudulent misrepresentations.[107] Zero Odor has alleged (1) several specific fraudulent statements regarding SAT's product offerings, intellectual property protections, and intentions, (2) that SAT, through Schneider, made the statements and (3) that the statements were made

---

[105]    *See* Compl. ¶ 52

[106]    *See* Pl. Opp. at 17.

[107]    *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

repeatedly through 2007 to 2011.[108]  Plaintiffs have also sufficiently alleged facts

giving rise to the inference of fraudulent intent – namely, the desire to reap the

benefits of Zero Odor's royalty payments, exclusive purchases, and shares while

profiting from sales through Rem to Zero Odor's competitors.[109]  As the Second

Circuit has noted, "[t]he requisite 'strong inference' of fraud may be established

either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness."[110]  The facts

alleged show a pecuniary motive (continued royalty payments) and opportunity

(Rem).  The circumstances surrounding SAT's assurance of intellectual property

protection – followed by Rem's use of this intellectual property – also provides

circumstantial evidence of conscious misbehavior.[111]

       Fraud and contract claims are duplicative when the fraud allegation is

---

[108]    *See* Compl. ¶¶ 19-28, 55-59.

[109]    *See id.*

[110]    *Shields*, 25 F.3d at 1128

[111]    SAT's motive and Zero Odor's subsequent royalty fee payments demonstrate intended and actual reliance. *See Lomaglio Assocs.*, 876 F. Supp. at 44 (noting that defendant must act "with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on the false statement to its detriment").

merely that the defendant agreed to the contract without intending to perform.[112]

Here, Zero Odor alleges a sustained course of conduct that continued well after the

last contract between the parties.[113]  Any "subsequent assurances of performance"

would ensure that a fraudulent representation claim is not "virtually identical to the

promise contained in the contract."[114]  Thus, defendants' motion to dismiss the

fraud claim is denied.

## I.   Leave to Replead

Whether to permit a plaintiff to amend its complaint is a matter

committed to a court's "sound discretion."[115]  Rule 15(a) provides that leave to

amend a complaint "shall be freely given when justice so requires."[116]  Moreover,

"[i]t is the usual practice upon granting a motion to dismiss to allow leave to

replead."[117]  Plaintiffs may amend their complaint to allege with additional

---

[112]    *Sichel*, 230 F. Supp. 2d at 328 (quoting *Rocanova*, 83 N.Y.2d at 614).

[113]    *See* Compl. ¶ 11 (alleging that the Amended SRA was signed in 2007).

[114]    *Gotham Boxing*, 2008 WL 104155, at *10.

[115]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[116]    Fed. R. Civ. P. 15(a).

[117]    *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

specificity claims three, four, five, and six within twenty (20) days of the date of this Order.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion as to claims three, four, five, and six is granted.  Claim six is dismissed with prejudice.  Claims three, four, and five are dismissed with leave to amend.  Defendants' motion as to claims one, two, and seven is denied.  The Clerk of the Court is directed to close this motion [Docket No. 7].  Any amended Complaint must be filed within twenty-one (21) days of the date of this Order.  A conference is scheduled for October 30th at 5:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 19, 2012

**–Appearances–**

**For Plaintiffs:**

Neal Brickman, Esq.
Law Offices of Neal Brickman, P.C.
317 Madison Avenue, 21st Floor
New York, NY 10017
(212) 986-6840


**For Defendants:**

Terence J. Devine, Esq.
Devine, Markovits & Snyder
52 Corporate Circle
Albany, NY 12203
(518) 464-0640